May it please the Court, Tim Foley for Petitioner-Smith. In 2004, this Court remanded this case to the District Court for factual development regarding the question of whether the petitioner was entitled to equitable tolling such that his 2002 Federal petition would be timely. Essentially, the remand meant that before dismissing the District Court had to analyze the factual allegations regarding equitable tolling. The District Court did not appoint counsel. Mr. Smith was fending for himself, and the District Court did not hold an evidentiary hearing. Instead, the District Court reviewed the documents and allegations. And while it held that Mr. Smith was entitled to some equitable tolling, for a period between 1998 and 1999, the District Court held that the allegations of Mr. Smith lacked credibility and that he was not entitled to equitable tolling for that time. That's the main area. That's one of two main areas of dispute on appeal, the 98-99 period. There was a separate dispute because the magistrate judge then reached out to decide that as to 2001-2002 period, a period during which Mr. Smith was not entitled to equitable tolling. The magistrate judge then reached out to decide that as to 2001-2002 period, a period during which Mr. Smith was not entitled to equitable tolling. The magistrate judge then reached out to decide that as to 2001-2002 period, a period during which Mr. Smith was not entitled to equitable tolling. And without giving Mr. Smith a chance to respond to that change in law, and without giving Mr. Smith a chance to argue equitable tolling or detrimental reliance with regard to that 2001-2002 petition. Those are the two main bones of contention, the 98-99 period in which Mr. Smith made allegations entitling him to equitable tolling, and the I want to go into more detail in the 98-99 equitable tolling period. Mr. Smith represented himself in the district court. He made a number of factual allegations. The most significant of those factual allegations is in paragraph 7 of his declaration in his opposition to the motion to dismiss, which is at pages 33 to 34 of the excerpts of record, in which he alleged that when he was sent out to Tulare County in the fall of 98 for the litigation of his Tulare County petition, he was not allowed to take his legal transcripts and documents. The prison essentially packed them up. When he returned in September of 98 without the hearing, the prison told him his legal materials were gone, they couldn't find them, they tried to find them, they looked for them, he asked them to look for them, he never saw them again. Now, under Lott v. Mueller and a number of other cases, including Espinoza-Matthews v. California, this Court has held that the confiscation of legal materials such that a pro se Petitioner cannot prepare a petition reasonably entitles the Petitioner to equitable tolling. The magistrate judge below found that Mr. Smith's allegations were not credible. And the reason the magistrate or what allowed the magistrate judge to make that finding is in footnote 1, which is at excerpts of record 270, in which the magistrate judge did something fairly tricky, and I mean tricky in the negative sense. He misconstrued the Petitioner's allegations by saying that, I'm going to assume the Petitioner is alleging he lost his legal materials in December of 97. Now, I can see the Petitioner was not entirely consistent, and he did allege a lot of things. But the magistrate judge, by taking the December 97 date as the date of the loss of the documents, then was able to say, well, since Petitioner filed in the spring of 98 some State petitions that included transcripts as exhibits, I'm going to reject the credibility of the Petitioner's claim that he was without his legal materials. In so doing, the magistrate judge ignored the actual date of the loss of the legal materials that the Petitioner was alleging, which is the fall of 98. Was that August 18th? August 18th is the date of the ruling in Tulare County Court. That's correct. It is that event that caused Petitioner to be shipped out of prison to Tulare County. So that's when you might get to start the extraordinary circumstances in your favor. Yes. Well, I think the extraordinary circumstances would start from that date, because he didn't have his materials with him, and when he got back to the prison, he was told they were gone. And when would they end? When would the extraordinary circumstances be over? The extraordinary circumstances would be over after a reasonable period in which he taught he tried to reconstruct those documents. The allegation is that he's entitled to a year of equitable tolling, because from March of 99 on, the district court gave him equitable tolling because of his medical condition. What happened was he attempted to reconstruct his legal materials. Then he got sick in 99, recovered from his illness in 2001, and then began to diligently pursue his remedies in state court. That's about March 1, 01. March 1, 01. Right. See, the problem here's what I here's the problem I have. Tell me what I'm missing. The direct appeal was over on November 10 in 97. So the clock starts there. Statutory tolling got 365 days. On February 26, 98, the state habeas petition was filed. So that stops the clock. You got 257 days left. Habeas is denied on August 18, 98, so statutory tolling ends. 8-18-98 is the start of extraordinary circumstances. Equitable tolling starts. You got 257 days left. If you go to March 1, 01, at the end of extraordinary circumstances, you have 257 days left. The clock starts again on March 1. The time expires then with 257 days on November 13, 01, and the habeas petition isn't filed until 8-21-02. It's untimely by 281 days. That is where we get into the second part of my argument. At March 1, 2001, he's entitled to statutory tolling because at that point, he's back in court in Tulare County litigating and exhausting his remedies. He's in Tulare County from November of 2001. That one tossed out is untimely? That one was tossed or that one was denied in a summary determination by Tulare County on numerous grounds. I do not concede that was a timeliness rejection. The court cited Dixon, Clark, and Black and held that the order held that it was a mixed finding. The court held that he had failed to give sufficient grounds for the renewal of some of his claims, had failed to give sufficient grounds for the repetition of his claims in the habeas, and held that as to new claims, he should have brought them earlier. But it was not an unequivocal timeliness default. That's the November 30, 2001, ruling. It's my position that that is, in effect, a ruling based upon conditions for relief. So under R-2s, as opposed to Pace — I would have thought that would be Pace. It's not properly filed. And instead of just giving one reason, they give a bunch of reasons that all independently as well as together would compel the result. Well, because Pace is so new and Bonner is so new, we don't have a definitive statement as to what a mixed ruling means. But it seems to me that if the court rules as part of its ruling that it's — It never ruled on the merits of any of his arguments. It did not rule on the merits of any of his arguments. But R-2s is still good law for the proposition that a procedurally flawed petition is nonetheless properly filed if that procedural flaw is a condition for relief as opposed to a condition for filing. Now, if timeliness is a condition for filing, that's fine. But the ruling in this case in the Tulare County Court was a mixed ruling that combined conditions for relief with conditions for filing and therefore was properly filed. So to get back to Judge Trott's question, he's entitled to statutory tolling from March of 2001 through the Tulare County ruling in October of 2001. Then he's entitled to statutory tolling during his time in the Fifth District Court of Appeal. Now, whether or not the California Supreme Court's ruling in the 2002 petition is timely or not doesn't matter, because he only spent about eight months in the California Supreme Court, and he makes it in on time. I see my time has expired, and so I'll stop there. Thank you. Good morning, Your Honors. May it please the Court, Justin Riley on behalf of the Warden. The period of time between the finality of the opponent's conviction and the filing of his Federal petition spanned the course of almost five years. As Judge Trott did, I did a timeline. I think that's the only reasonable way to set this forth. But as Judge Trott recognized, it's undisputed that the statute ran 108 days until August 18, 1998, with 257 days left. Over the next four years, as the district court found, the appellant was unable to toll the statute, either through statutory tolling or equitable tolling. As for the equitable tolling, appellants failed to show that the district court's factual findings were clearly erroneous. As for the date that appellant allegedly lost his materials, I believe it's excerpts of record, page 43. Appellant stated in a prison document to prison officials that he lost, or his property was taken from him, December 20, 1997. He lists all the property in subsequent pages, which include his state court records, his filings, and other proceedings. And he said, I never saw him again. I requested that the district court, that they find that this was the date that he lost his materials through judicial estoppel, and the court reasonably found so. As for the lack of access to the law library, the documents show that appellant did, in fact, access the law library. He had 12 legal, excuse me, legal document requests that appear in his case file. And he even used some of the cases that he requested in subsequent filings. The credibility determinations were reasonable. And not only does a district court have the option to forgo an evidentiary hearing if the factual disputes can be resolved on the record, but the district court can, in lieu of an evidentiary hearing, allow expansion of the record, which it did in this case. It allowed appellant to present declarations, documents from his prison file. The Smith's counsel says statutory tolling kicks back in in connection with the Tullary business. And your answer to that is what? I don't agree with that at all. And neither did this Court, apparently, in Bonner v. Carey. Applying Pace, I've been unable to distinguish Bonner v. Carey from this case in any meaningful regard, even down to the wording of the State court's denial on timeliness grounds. At page 17 of my brief, I have an excerpt of the State court's denial of that petition, of the first petition after the equitable tolling may have kicked in. And I cite Bonner on the very next page. And if you compare the two quotes, they seem to be virtually identical. And this Court in Bonner found that to be a timeliness, a denial on timeliness grounds. And under Pace, foreclosed. That's correct. I believe that's all I have. I'd love to entertain any questions if the Court has anything for me. There don't appear to be any. Thank you, counsel. Thank you. The case just argued is submitted for decision. And that concludes the Court's calendar for this morning. The Court stands adjourned.
judges: Schroeder, Trott, Kleinfeld